COURT OF APPEALS OF VIRGINIA

Present: Judges Raphael, Lorish and Bernhard
Argued at Christiansburg, Virginia


DOROTHY LEE BLEVINS, ET AL.

                                     MEMORANDUM OPINION[*] BY

v.      Record No. 1954-24-3            JUDGE STUART A. RAPHAEL
                                        OCTOBER 28, 2025

ROBERT A. LARRABEE, ET AL.


FROM THE CIRCUIT COURT OF WASHINGTON COUNTY
C. Randall Lowe, Judge Designate

Randall A. Eads for appellants.

(Michael A. Bragg; Bragg Law, on brief), for appellees. Appellees
submitting on brief.


Dorothy and Cecil Blevins appeal the trial court's ruling that an easement across their

property held by Robert A. and Linda W. Larrabee is 20 feet wide. The parties agree that the

Larrabees have an easement but disagree about its width. Because the easement did not address

the width, the trial court relied on a long history showing that the parties and members of the

Blevins family treated the easement as 20 feet wide. Because the record evidence supports that

conclusion, we affirm.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND

Dorothy and Cecil Blevins[1] and the Larrabees own adjacent parcels of land in Washington County. This annotated aerial photograph was admitted into evidence at trial to show the layout of the properties and the easement in question:[2]



The Larrabees' one-acre parcel lies directly west of Dorothy and Cecil's land. Dorothy and Cecil own a 67-acre parcel to the east (and extending to the south) of the Larrabees' property. Within that 67 acres, Dorothy and Cecil live on combined 0.49-acre and 0.13-acre lots immediately to the east of the Larrabee land. The Larrabees' parcel is landlocked but for an easement right to cross the northernmost strip of Dorothy and Cecil's property to reach

---

[1] Because many members of the Blevins family appear in the relevant title records, we use their first names to avoid confusion.

[2] Dorothy and Cecil's last name is misspelled "Blevens" in the exhibit.

Discovery Road (Virginia secondary route 862) to the east. All parties agree that the Larrabees enjoy the easement to access Discovery Road, but they disagree about its proper width.

All the land at issue here was once owned by Bessie Barker, whose maiden name was Blevins. On October 23, 1975, she conveyed the 1-acre and 67-acre parcels to Rondy and Maudie Blevins (Cecil's parents). That same day, Rondy and Maudie split a 0.49-acre lot from their new 67-acre parcel and conveyed it to Wilton and Wanda Blevins, their son and daughter-in-law. In doing so, Rondy and Maudie granted to Wilton and Wanda "the right to use for road purposes a 20 ft. wide strip of land lying along Grantor's north property line" and reserved for themselves "the right to use for road purposes a 20 ft. wide strip of land lying along the two northernmost lines of the lot of land herein conveyed." That allowed Wilton and Wanda to cross the 67-acre parcel to get to their 0.49-acre lot, and allowed Rondy and Maudie to cross both their own 67-acre parcel and the 0.49-acre lot to get to their 1-acre parcel.

In October 1991, Rondy and Maudie sold to Dorothy and Cecil the remaining portion of the 67-acre parcel (subtracting Wilton and Wanda's 0.49-acre lot). That "conveyance [was] subject to all existing easements" but did not create a new easement for Rondy and Maudie to access their remaining one-acre parcel.

In April 1993, Rondy died intestate, leaving the one-acre parcel to Maudie. In November of that year, Dorothy and Cecil conveyed 0.13 acre of their parcel to Wilton and Wanda to account for an encroachment. A plat attached to the deed shows the roadway stretching through the 0.13-acre parcel, but the deed contains no reference to a new easement in anyone's favor. The plat shows the right of way to Discovery Road as 20 feet wide.

In January 1994, Wilton and Wanda sold both the 0.49- and 0.13-acre lots to Galen Blevins as life tenant and Delbert Blevins as remainderman. That sale included all of Wilton and Wanda's "right, title and interest in and to a certain 20' roadway." The conveyance was made

"subject to such easements . . . as may affect the real property," including the right to cross Dorothy and Cecil's land for access. In 2004, Maudie died intestate, leaving equal percentages of the one-acre parcel to her nine children. One of the children conveyed her 1/9 share to Dorothy and Cecil.

The Larrabees purchased the one-acre parcel from the Blevins children (and Dorothy) in 2008. As part of their purchase, the Larrabees were to receive "access to Discovery Road along the driveway." Dorothy and Cecil were positioned to offer an easement across their 67-acre lot, but at that time Galen or Delbert (both not parties to the deed) owned the 0.49- and 0.13-acre lots, so Dorothy and Cecil could not have granted an easement over either parcel. The sale was also "made subject to . . . easements, if any, contained in the instruments constituting the chain of title to the property conveyed," thus including Rondy and Maudie's original reservation over the 0.49-acre lot but nothing over the 0.13-acre lot. The deed does not otherwise describe the width or shape of the existing easement.

In 2010, Delbert conveyed the 0.49-acre and 0.13-acre parcels to Leonard and Betty Tenney. That deed, like the 1994 deed before it, purported to convey "all Grantors['] right title and interest in and to a certain 20 twenty foot roadway connecting the real property hereby conveyed with Virginia secondary Route 862[,] . . . subject to such easements, right-of-ways restrictions and covenants of record as may affect the real property hereby conveyed." Finally, in 2011, the Tenneys sold both lots to Dorothy and Cecil, "TOGETHER with the 20 foot right of way from the subject property to Virginia Secondary Route 862." Once more, that sale was "subject to . . . easements, if any, contained in the instruments constituting the chain of title."

In sum, as of 2011, Dorothy and Cecil owned the entirety of Rondy and Maudie's original 67-acre parcel. The Larrabees owned the landlocked one-acre lot.

In February 2018, the Larrabees sued Dorothy and Cecil for damages and an injunction to prohibit them from interfering with the Larrabees' easement, "20 feet in width." The neighbors had been disputing their respective rights since 2013, and Dorothy and Cecil ultimately built narrowing fencing along the easement and at times locked a gate at the entrance to Discovery Road. During the pendency of the case, Dorothy and Cecil added an infrared camera and stone walls on either side of a narrowed roadway within the easement, limiting the usable area of the easement at its narrowest point to 8.5 feet.

The matter came before the trial court for a bench trial on December 22, 2021. Robert Larrabee testified that he and his wife understood when they bought the 1-acre parcel that it included the 20-foot driveway to cross Dorothy and Cecil's land to access Discovery Road. Three of Cecil's siblings—all grantors in the 2008 deed conveying the property to the Larrabees—testified that they too thought the Larrabees would have access to the full 20 feet of the easement, just as everyone else did who had lived on the parcels in the past.

Dorothy was the sole witness for the defense. She acknowledged the common references to the 20-foot easement in the deeds but refused to concede that the Larrabees enjoyed anything more than the narrowed driveway across her land. Dorothy and Cecil moved to strike the Larrabees' evidence, arguing that their reconsolidation of the 67-acre parcel merged and extinguished any 20-foot easement, leaving the Larrabees with only what was granted in 2008. The court took the motion under advisement.

The trial court issued a letter opinion concluding that the Larrabees were entitled to a 20-foot-wide easement. The court accepted Dorothy and Cecil's concession that the Larrabees enjoyed an easement to access Discovery Road. Finding the 2008 deed to the Larrabees ambiguous about the width of the easement, the court relied on the landowners' long history of

maintaining a 20-foot "driveway" across the parcels. The court concluded that the "driveway" mentioned in the 2008 deed was necessarily the 20-foot-wide historical access road.

The court's final order memorialized the conclusions in the letter opinion and entered a permanent injunction barring Dorothy and Cecil from obstructing the easement. The court denied the Larrabees' claim for damages but awarded reimbursement for a court-ordered survey. The trial court did not address Dorothy and Cecil's merger-and-extinguishment argument.

Dorothy and Cecil noted a timely appeal.

ANALYSIS

"When a trial court renders judgment after a bench trial, we cannot set aside that judgment as contrary to the evidence 'unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it.'" *Moncrieffe v. Deno*, 76 Va. App. 488, 496 (2023) (quoting Code § 8.01-680). "When judges sit as factfinders, 'no less than jurors,' we give their determinations 'the highest degree of appellate deference.'" *Id.* (quoting *Palmer v. R.A. Yancey Lumber Corp.*, 294 Va. 140, 158 (2017)). "We likewise 'view the evidence and all reasonable inferences drawn from it in the light most favorable to . . . the prevailing party at trial.'" *Id.* (alteration in original) (quoting *Palmer*, 294 Va. at 159). "The circuit court's application of law to facts, however, is reviewed de novo." *Callison v. Glick*, 297 Va. 275, 288 (2019). We also "review de novo a circuit court's interpretation of words in a deed." *Marble Techs., Inc. v. Mallon*, 290 Va. 27, 33 (2015).

On appeal, Dorothy and Cecil argue that the trial court erred in concluding that the Larrabees' easement is 20 feet wide. They assert that the easement is only as wide as is reasonably necessary for the Larrabees to access Discovery Road. They also press their merger-and-extinguishment theory.

*A. The trial court's finding that the Larrabees' easement is 20 feet wide was well-supported by the evidence.*

"The issuance of an injunction to prevent encroachment within the boundaries of an easement is an equitable remedy, and the proponent of such remedy bears the burden of proving facts establishing the easement and the need for the relief sought." *Anderson v. Delore*, 278 Va. 251, 257 (2009). "In resolving a dispute between landowners regarding the terms of an easement that is granted or reserved expressly by deed, we apply the customary rules governing the construction of written documents." *Id.* "Thus, we ascertain the rights of the parties from the words set forth in their deeds." *Id.* "A deed may expressly create an easement but fail to define specifically its dimensions." *Id.* When that happens, "the court in order to ascertain the intention of the parties looks to the language employed in the light of the circumstances surrounding the parties and the land at the time the deed was executed." *Hamlin v. Pandapas*, 197 Va. 659, 664 (1956) (quoting *Stephen Putney Shoe Co. v. Richmond, Fredericksburg & Potomac R.R. Co.*, 116 Va. 211, 217 (1914)). "[W]here the description admits of two constructions, it will be construed most favorably to the grantee." *Id.* "And the construction placed upon the language by the parties themselves is entitled to great weight in determining the intention of the parties." *Id.*

The historical deeds and plats in this case generally showed the driveway to Discovery Road to be 20 feet wide. All of the instruments in the chain of title that mentioned the width of the driveway said it was 20 feet wide: the 1975 deed from Rondy and Maudie to Wilton and Wanda; the plat attached to the 1993 deed from Cecil and Dorothy to Wilton and Wanda; the 2010 deed from Delbert to the Tenneys; and the 2011 deed from the Tenneys to Cecil and Dorothy. Other instruments transferring the easement without specifying its width said that the conveyance was "subject to" all existing easements and rights-of-way of record: the 1991

conveyance from Rondy and Maudie to Cecil and Dorothy; and the 1994 conveyance from Wilton and Wanda to Galen and Delbert.

The Larrabees acquired the one-acre parcel from the Blevins family in 2008, "together with access to Discovery Road along the driveway." The deed referenced the prior instruments in the chain of title, dating back to and including the 1975 deed that first specified the 20-foot width. The Larrabees' deed also said it was "subject to any . . . easements . . . in the instruments constituting the chain of title." Given the consistent course of conduct by the various grantors and grantees in the chain of title, a reasonable purchaser in the Larrabees' position would have understood from the chain-of-title records that the easement was 20 feet wide.

That conclusion is buttressed by the testimonial evidence adduced at trial. Robert Larrabee as grantee, and three of Cecil's siblings, as grantors, testified to their understanding at the time of the 2008 grant that the Larrabees would enjoy use of the entire "driveway," the full 20-foot-wide roadway that had historically existed.[3] Robert also testified that Lloyd Blevins (one of the grantors) told him at closing that the right-of-way was 20 feet wide. Lloyd said his father had "always told" him it was 20 feet wide. Darlene Blevins (another of the grantors) agreed, "That's what they've always said it was through there." The only contrary view was offered by Dorothy, who said she thought the deed conveyed only a limited right to access Discovery Road. As the factfinder, the trial court was entitled to reject her testimony as inconsistent with the greater weight of the evidence. *See*, *e.g.*, *Khalid-Schieber v. Hussain*, 70

---

[3] No party has argued that the trial court erred in considering as proper parol evidence what the grantors and grantees privately *thought* was intended by the language in the 2008 deed conveying access along the driveway to Discovery Road. *But see Worsham v. Worsham*, 74 Va. App. 151, 173 n.6 (2022) ("Parol evidence is . . . 'never competent to show merely what one of the parties to a contract thought.'" (quoting *Title Ins. Co. of Richmond v. Howell*, 158 Va. 713, 718 (1932))). Because no party objected, we assume without deciding that the trial court properly considered that parol evidence. We do so, "not as a basis for deciding the contested issue of law, but as a basis for not deciding it." *Commonwealth v. Holman*, 303 Va. 62, 75 (2024) (quoting *Logan v. Commonwealth*, 47 Va. App. 168, 172 n.4 (2005) (en banc)).

Va. App. 219, 234 (2019) (explaining that the factfinder "ascertains a witness'[s] credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness'[s] testimony" (quoting *Street v. Street*, 25 Va. App. 380, 387 (1997) (en banc))).

Dorothy and Cecil argue that if a deed creates an easement but fails to specifically define its dimensions, the court must consider "the object or purpose of the easement" and set "the dimensions of the easement . . . 'to be such as are reasonably sufficient for the accomplishment of that object.'" *Anderson*, 278 Va. at 257 (quoting *Hamlin*, 197 Va. at 664). But that rule is inapplicable when, as here, credible evidence shows that the parties intended specific dimensions but simply failed to specify them. *See Waskey v. Lewis*, 224 Va. 206, 212 (1982) (affirming determination of road's dimensions where trial court based its decision on "testimony of . . . several witnesses respecting the road's width, and having observed the plat referred to in the deed").

In short, the construction of the language by the parties was "entitled to great weight in determining the intention of the parties." *Hamlin*, 197 Va. at 664. The deeds and plats, together with the witness testimony, provided strong evidence that when the 2008 grantors conveyed the 1-acre parcel to the Larrabees, together with the "driveway," they meant the 20-foot roadway historically used to access Discovery Road. Because the trial court's finding is well-supported by the evidence, we cannot say that it is plainly wrong.

B. *Dorothy and Cecil's merger-and-extinguishment argument lacks merit.*

Having found that the trial court properly determined that the Larrabees' easement is 20 feet wide, we find no reversible error in the trial court's failure to address Dorothy and Cecil's argument that their reconsolidation of the 67-acre parcel extinguished the Larrabees' easement altogether. Dorothy and Cecil misapply the merger doctrine. That doctrine provides that easements may be "extinguished by operation of law if the seisin [ownership] of the dominant and

servient tenements becomes united in one and the same person." *Read v. Jones*, 152 Va. 226, 231 (1929) (emphasis omitted) (quoting John Leybourn Goddard, *A Treatise on the Law of Easements* 457 (1880)). But that is not what happened here.

The Larrabees' one-acre parcel and Dorothy and Cecil's three parcels have not been under common ownership since 1975. Dorothy and Cecil's 2011 purchase of the 0.49- and 0.13-acre dominant parcels might have extinguished those parcels' easements to cross the remainder of the 67-acre tract. But Dorothy and Cecil do not explain (nor could they) how the 2011 purchase could have extinguished the rights acquired by the Larrabees in 2008 for a different parcel.

In any case, Dorothy and Cecil conceded that the Larrabees have an easement. The only question was how wide it should be. And the extrinsic evidence considered by the trial court showed that it had always been 20 feet wide.

CONCLUSION

We find no reversible error in the trial court's judgment that the Larrabees' easement across Dorothy and Cecil's property is 20 feet wide.

*Affirmed.*